**GREER v. UNITED STATES.**

No. 10379.

Circuit Court of Appeals, Fifth Circuit.

April 16, 1943.

Hal Lindsay, of Atlanta, Ga., for appellant.

M. Neil Andrews, U. S. Atty., and J. Ellis Mundy, Asst. U. S. Atty., both of Atlanta, Ga., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant and four others, one individual, Hiram W. Evans, and three corporate defendants, were charged with violating the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. The indictment in three counts charged them with conspiring to restrain, attempting to monopolize, and conspiring to monopolize, trade and commerce in emulsified asphalt by fixing and controlling the price of this product shipped into Georgia, and by eliminating competition in respect of it. Appellant Greer pleaded not guilty, and on a trial to a jury was convicted on all three counts and sentenced to imprisonment. His co-defendants pleaded nolo contendere and were sentenced to pay fines. The theory of the prosecution was that Evans was the master mind, the villain in the piece, the corporate defendants were his willing partners, and Greer, the purchasing agent for the Georgia Highway Department, was Evans tool, in a plot and plan Evans had formulated and carried out to monopolize and control the bids on emulsified asphalt for use on Georgia highways. As to Evans and the corporations, there was overwhelming evidence both direct and circumstantial fully sustaining the theory of the prosecution. As to Greer, the matter stands quite differently. No single witness testified to his complicity, and the circumstances relied on to convict him were certainly far from compelling. Indeed, they were so far from it that appellant, arguing with conviction that they were at least as consistent with his innocence as with his guilt, is here insisting that it was reversible error not to instruct a verdict for him on his motion. In the alternative, he insists that if the evidence was sufficient to take the case to the jury, it was only barely so, and the record standing thus, the trial judge erred to his prejudice in the conduct of the trial.

A careful reading of the record convinces us that, entirely circumstantial though the evidence is, and of such a character that the jury might well have rendered a verdict of not guilty, taking it as a whole, we cannot say of it that it demanded a verdict of acquittal. We agree with appellant, however, that the trial was attended with prejudicial error requiring a reversal. Circumstantial as the case against Greer was, and depending for a verdict as it did on straws showing the way the wind blew, it was most damaging to him to admit into evidence without at least qualifying its effect as requested by defendant in refused Charge No. 7,[1] the testimony of Mrs. Ingle, a familiar of Evans and a one time employee of the Ku Klux Klan, then working in the Highway Department under Greer, that Evans had stated to her that he was going to buy Greer a place near Atlanta and move his family onto it from Lakeland.[2] From that

---

[1] "I charge you that while certain testimony has been admitted concerning alleged statements of a co-defendant, who is not on trial, made out of the presence of the defendant on trial, that he intended to buy a described tract of land, and give it to the defendant, these alleged statements are not in and of themselves to be considered by you as evidence of the conspiracy alleged in the indictment, but such alleged conspiracy must be established, if at all, by other evidence, and must be found by you from such other evidence to have existed at the time of the making of such alleged statements, before you would be authorized under the law to consider them in connection with the other evidence, and then only if you find from the evidence that they were in fact made."

[2] This was her testimony:

"During 1937 Dr. Evans and his family and my family were friends. We visited them from time to time. Some time in the Spring of 1937 I received a telephone call from Dr. Evans with reference to the names of bidders, he asked me to look at cards that we kept in a little file for invitations to all bidders, and asked me to make a copy of it and send it to him. He wanted to know who was on the cards. I did as he asked me. As well as I remember, there were four companies on that card, and there was somebody had put another name on there, and sent them an invitation, and he was very provoked about it. That was the reason for wanting the list to see who we sent invitations to. I think that was the time of the Asphalt Prod-

time on this testimony so dominated the case that the controlling issue in it became, not whether Greer had been proven by competent evidence, guilty of entering into a conspiracy, but whether Evans had made the statements attributed to him by Mrs. Ingle. In his argument to the jury, the District Attorney rang the changes on this statement and, over the defendant's objection that Dr. Evans was a co-defendant and therefore not callable as a witness for defendant, urged that the statements must have been true or Evans would have been called to deny them.[3] In his charge to the jury, the District Judge stated that one of the contentions of the Government was "that a part of the consideration Greer was to receive was Evans' promise to give him a certain tract of real estate in Fulton County, Georgia, which was later actually deeded to Greer, but that, for the purpose of concealing the real transaction, the deed, which was from a third party, was kept off the real estate records of Fulton County. * * * It is for you to determine from the explanations, as disclosed by the evidence, with respect to the purchase, the manner of conveyance, the method and time and place of making payments therefor, and the relationship of the parties, what the truth about the matter is, and whether or not the transaction had any connection with the matters alleged in the indictment." Appellant was defended by able counsel of his own choice, and this testimony came in without objection. Cf. Glasser v. United States, 315 U.S. 60, 74, 62 S.Ct. 457, 86 L.Ed. 680. Though, therefore, not admissible over objection, because a purely hearsay statement not made in furtherance of a conspiracy, its mere acceptance into evidence cannot be and is not made a basis of reversal. The failure to object to it, however, did not make it evidence of a fact which it did not legally tend to prove, nor deprive appellant of his right to have its effect properly limited, and the failure of the court to charge the jury at appellant's request that it could not be taken as any proof of the conspiracy itself was reversible error. It is true the judge did give a general charge that statements of one charged as a conspirator, made out of the presence of others also so charged, are not admissible against those others to prove the conspiracy and are admissible only when the conspiracy has been proved by the evidence, and only then when they are made in furtherance of its object. But this was by no means sufficient for appellant's protection here, for a very great deal had been made of the Ingle statement. It had colored the introduction of the evidence and the course of the argument. The judge had called at-

ucts Company's bid. That is my best recollection about it.

"One evening in the Spring of 1937 we were over at dinner at the Doctor's home on Dellwood Drive. It was about two months after I had gone to work in Mr. Greer's office at the State Highway Department, which would put it some time in April, 1937. After we had dinner that evening, we were sitting on the divan, kind of in the back of the living room. Dr. Evans said he had been riding, looking at some property that day, at the corner of Johnsons Ferry and Balloon Road; that he was going to give this piece of property to Mr. Greer, and move his family from Lakeland up to live on the place. Mr. Greer's family was living at Lakeland at that time.

"About three weeks later, Mr. Greer rang for me and asked me to put some deeds up for him, if we had a safe place to keep them, and I said, 'We have a file with a lock,' and he gave me the deeds and I locked them in the file. Several months after that he asked me what I did with them, and I told him they were still in the files, and I re- turned the deeds to Mr. Greer. The last time I saw them was when I handed them to Mr. Greer. At the time he gave me the deed I looked at it and it was located at the corner of Johnsons Ferry and Balloon Road."

The testimony as to the deed was flatly denied by Greer, and quite an issue was made as to the deeds, but because Evans was a co-defendant and also was on trial under an indictment in the State court, defendant was not able to call him to deny the statements Mrs. Ingle had attributed to him.

3 "It was Nell Ingle who said that Dr. Evans told her some two or three months after she went to work for the Highway Department, which they think would make it April or May that he was going to buy this property on Balloon Road, or Johnson Road, or Douglas Road, give it to Mr. Greer and bring him up here to live. * * * Dr. Evans must have told her what she told you, or Mr. Lindsay would have had Dr. Evans here on this stand, as I hoped he would have so you could see him and hear him."

tention to and magnified it in his charge. The jury might well have understood that the statement was admissible to prove the fact of the conspiracy and have allowed it to tip against defendant the otherwise balanced scales. It was appellant's right to have the jury positively instructed, in the language of the charge requested and refused, that the statements imputed to Evans could not be taken by the jury as any evidence of the existence of a conspiracy and could not be received by them or considered for any purpose unless and until the conspiracy was otherwise established. When, as the case makes plain, the whole purpose of the introduction was to smear Greer, and thus implant in the minds of the jury a suspicion that he must have been conspiring with Evans or Evans would not have made that statement, it became essential to Greer's protection against a conviction on suspicion, to his right, in short, to a fair trial, that the precise effect of, the precise limitation on, that evidence, if believed by them, be charged to the jury on appellant's request. Because the judgment must be reversed for this error and it is most improbable that the other grounds of error will arise on another trial, it would serve no useful purpose to discuss or decide them. The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.